UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MILAGIO PLUMEY,

                                 Plaintiffs,              MEMORANDUM DECISION
                                                          AND ORDER

   -against-                                                00 CV 8971 (GBD)

NEW YORK STATE; SPO KENNETH WEGMAN,
in his official and individual capacities, and;
JAMES DRESS, in his official and individual
capacities,

                                   Defendants.
------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

      Plaintiff brings suit against defendants alleging violations of her equal protection and due process rights under the Fourteenth Amendment, her right to free speech under the First Amendment, as well as her rights under Title VII of the Civil Rights Act and the Americans with Disabilities Act ("ADA"). Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion to dismiss is granted.

## BACKGROUND

      Plaintiff Milagio Plumey, a Latino female, was hired as a parole officer by the New York State Division of Parole in 1989.[1] She alleges that she was the subject of several discriminatory acts that form the basis of her constitutional claims. She asserts, generally, discrimination and retaliation based on gender and mental and emotional handicap. Her complaints began in September of 1993, when one of the defendants became her supervisor. At this time, she alleges that during an arrest of a parolee, her supervisor "advised plaintiff she was improperly dressed." Second Amended Complaint (hereinafter "Complaint") at 3, ¶ 11. During the same arrest, plaintiff claims that he "taunted" her and after exiting an elevator that "reeked of urine" stated in

---

[1] Plaintiff continues to be employed by the New York State Division of Parole.

front of coworkers "Plumey, I knew you were scared but I didn't think you were so scared that you wet yourself," and "[i]t's okay to draw your gun, just don't point it at me, Honey!" Id. at 3, ¶¶ 11 – 13. Plaintiff alleges that she complained about her supervisor's comments to another defendant, the Area Supervisor, who advised her that her supervisor would not apologize for his conduct. Id. at 4, ¶ 14.[2]

Subsequently, plaintiff alleges, her supervisor retaliated against her for her complaints by "micromanaging and stalking her." Id. at 4, ¶15. He "frequently screamed, yelled, banged and punched the door in her office," "throwing assignments on her desk," and finding fault with her work product. Id. Anxiety and stress from this situation caused plaintiff to take a five-month disability leave of absence, although plaintiff's complaint does not indicate when this leave was taken. Id. at 4, ¶ 16. In December of 1993, the Area Supervisor requested that plaintiff "go to Employee Health Services for a psychiatric evaluation." Id. at 5, ¶ 24. "In February 1994, . . . the psychiatrist handling patient referrals from the Division of Parole found plaintiff unfit to perform her duties of a parole officer." Id. at 5, ¶ 25.

Next, she alleges that "[i]n 1995, Area Supervisor . . . possessed a sexually explicit poster in the work place. The poster had been passed around the office, prior to plaintiff seeing it. Plaintiff thereafter complained about the inappropriate conduct of the Area Supervisor, and others who perpetuated the sexually inappropriate conduct." Id. at 6, ¶ 31. Plaintiff further alleges that "[t]hroughout 1995 and 1996, plaintiff received sexually explicit, threatening letters in the

---

[2] Plaintiff filed in November 1993 an agency affirmative action report directed to her supervisor's comments. The agency dismissed the complaint in May of 1994, and denied her appeal from that decision the following July. In June of 1994 plaintiff filed a complaint with the New York State Division of Human Rights, alleging a hostile work environment. Id. at 6, ¶¶ 26-28. Another such complaint was filed in February of 1998. The Division of Human Rights made "a finding of probabl[e] cause," and consolidated the 1994 and 1998 complaints. Id. at 10, ¶¶ 58-59. The hearing, which began in April 1999, was subject to several delays and concluded in December 1999. Id. at 11, ¶ 60. The agency dismissed plaintiff's complaints, and the Human Rights Appeal Board denied plaintiff's appeal. Id. at 11, ¶ 62. Plaintiff obtained a right-to-sue letter from the EEOC on September 28, 2000.

2

workplace." Id. at 6, ¶ 31. Although plaintiff does not aver from whom the letters came or whether any named defendant was responsible for the letter, she "believed the threats were authentic, and instructed [her] not to perform fieldwork alone." Id. at 6-7, ¶ 32. She further claims that during this period "sexually obscene remarks concerning [her] were written on the men's bathroom wall," and that she "was taken into the men's room and shown the statement." Id. An investigation into the letters was conducted and was closed with a finding that no Division staff members were involved. Id. at 7, ¶ 34. Plaintiff also complains that in 1997, one of two co-workers left a cartoon that she found "threatening and offensive to women in the office." Id. at 7, ¶ 35. Again in 1998, "plaintiff observed an inappropriate cartoon on the reception desk, and complained about it." Id. at 9, ¶ 48.

From "early 1997" to June 26, 1997, plaintiff was on disability leave. Id. at 7, ¶ 37. When she returned to work, the Regional Director issued a memorandum alleging that plaintiff was insubordinate, and in October 1997, another Area Supervisor not named as a defendant here advised that disciplinary action be taken due to plaintiff's "absence without authorization, [her] failure to follow directives, failure to keep her supervisor appraised of her daily activities and failure to make curfew checks." Id. at 8, ¶ 39. She claims that prior to her formal complaints and job stress related illnesses, she "had not been micromanaged or disciplined in the [same] manner." Id. at 8, ¶ 40.

In 1998, plaintiff sustained a back injury in a non-work related automobile accident, and was authorized to return to work March 3rd, 1998. Id. at 9, ¶ 47. She was subsequently out of work with complaints of job-related stress from March 10-19, 1998, and then again from May 1998 to September 1998. Id. at 9, ¶¶ 49, 53. When she returned to work disciplinary proceedings were instituted against her. Id. at 10, ¶ 54-57. Specifically, plaintiff was charged with "misconduct and

3

incompetence based on the following: (1) on September 18, 1998, she disrupted a meeting held by [the non-defendant Area Supervisor], and (2) plaintiff refused to obey the order of [that Area Supervisor and an SPO] to remain at a conference they were holding with plaintiff to discuss work procedures, assignments and her behavior." Id. at 10, ¶ 55. Plaintiff was ordered to the Regional Director's office to discuss her behavior on September 18, 1998. This meeting led to her suspension by the Regional Director who charged that "plaintiff behaved in an insubordinate, and discourteous manner toward [the] Director." Id. at 10, ¶ 57.

Plaintiff filed her initial complaint on November 27, 2000. She amended the complaint on June 19, 2002 and again on February 7, 2003. Plaintiff alleges nine causes of action in her Second Amended Complaint. In counts one and two, plaintiff alleges that defendants violated her Fourteenth Amendment equal protection rights by discriminating against her on the basis of her sex and for retaliating against her for her complaints of sexual harassment. In count three and five plaintiff alleges that New York State engaged in a custom, policy or practice of subjecting her to adverse actions.[3] In count six, plaintiff alleges violations of her First Amendment right to free speech. In count seven, plaintiff alleges that defendants violated her due process rights under the Fourteenth Amendment by falsely charging her with disciplinary charges. In count eight, plaintiff alleges that the defendants violated her Fourteenth Amendment rights by unfairly and maliciously stigmatizing her. Lastly, in count nine, plaintiff alleges a claim under the Americans with Disabilities Act ("ADA") due to discriminatory treatment during and after her two medical leaves of absence. Defendants have moved for dismissal under Federal Rule 12(b)(6) on the basis that all allegations supporting the claim are barred by the statute of limitations. Defendant New York

---

[3] Plaintiff alleged a claim under 42 U.S.C. § 1981 in count four, but subsequently dropped this claim.

4

State has also moved for dismissal on the grounds that the Eleventh Amendment prevents state entities from being sued for monetary damages under § 1983.

## DISCUSSION

The court must decide a motion to dismiss under Rule 12(b)(6) accepting all allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. See Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004). In order to avoid dismissal, a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000). The point at which "conclusory allegations" become valid pleadings lies where the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation. See, i.e., Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001). The court must not dismiss, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This principle is to be applied "with particular strictness when the plaintiff complains of a civil rights violation." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Discount Bank, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

A.  Eleventh Amendment

In her amended and second amended complaints, plaintiff asserts claims against New York State. The Supreme Court has held that "§ 1983 was not intended to abrogate a State's Eleventh

5

Amendment immunity." Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Where there is no "waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. Kentucky v. Graham, 73 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); see, e. g., Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464 (1945). This is subject to several qualifications. The first is that a State may still be sued for prospective equitable relief to prevent enforcement of state laws incompatible with the protections provided by the Constitution. See Edelman v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There are also two exceptions which allow recovery of money damages against a state. The first is when "Congress passes a statute abrogating the state[']s right to immunity in the particular context of that statute." Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 29 (2d Cir. 1991). The second is where the state decides to waive it's immunity to suit in federal court. Id. at 30. None of these exceptions apply here. New York has not waived it's immunity in the case at bar, and it is well established that Congress did not abrogate state immunity when enacting 42 U.S.C. § 1983. [4] As plaintiff seeks only monetary damages, defendant New York State's motion to dismiss based on Eleventh Amendment immunity is granted.[5] All of the claims against New York State are therefore dismissed.

---

[4] In her original pro se complaint, plaintiff's claims were directed towards the New York State Division of Parole. To the extent that she still asserts such a claim, it is also dismissed. A claim against a state agency is essentially a claim against the State, and therefore implicates the Eleventh Amendment, because the State is "a real, substantial party in interest." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25 (2d Cir. 1991) (finding the New York State Department of Correctional Services cannot be sued for money damages under § 1983 due to Eleventh Amendment immunity); Feingold v. New York, 366 F.3d 138 (2d Cir. 2004) (finding the New York State Department of Motor Vehicles is a state agency immune to suit under § 1983 by the Eleventh Amendment).

[5] The claims against individual defendants in their official capacities are also deemed to be against the State itself and also subject to immunity. See Kentucky v. Graham, 473 U.S. 159 at 169; Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998).

B. Fourteenth Amendment

The gravamen of plaintiff complaint are her claims of equal protection and due process violations under the Fourteenth Amendment. Her equal protection claims allege sex discrimination and retaliation while her due process rights claims allege that defendants subjected her to false disciplinary charges. Complaint at 13, 15, ¶¶ 74, 76, 86, 88. Claims for violations of constitutional rights are brought under 42 U.S.C. § 1983 ("§ 1983"), which requires that a plaintiff demonstrate: (i) a violation of a Constitutional right and (ii) that the alleged deprivation was committed by a person "acting under the color of state law." See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Defendants argue that plaintiff's constitutional claims under Section 1983 are time-barred. While there is no codified statute of limitations for claims brought under 42 U.S.C. § 1983, federal practice imputes the analogous state period for personal injury claims. See Curto v. Edmundson, 392 F.3d 502, 503-05 (2d. Cir. 2004). In New York, the statute of limitations period is three years. N.Y. C.P.L.R. § 214(5). This action was commenced on November 27, 2000, and accordingly any claims that accrued prior to November 27, 1997 are time-barred unless there is a basis to toll the statute of limitations. See Pinaud v. County of Suffolk, 52 F.3d 1139, 1156-58 (2d. Cir. 1995)(finding that "when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run").[6]

The statute of limitations is not tolled while relief is pursued under Title VII administrative remedies. The state law where a federal court sits determines the tolling of

---

[6] Since 1993, plaintiff has consistently registered complaints against her supervisors, including: an agency affirmative action report in 1993; a complaint with the State Division of Human Rights in 1994; lodging a complaint against graffiti in the bathroom in 1995; repeated complaints "about the sexually degrading and hostile environment"; a grievance to the union in 1998, a second complaint with the State Division of Human Rights in 1998 which proceeded through 2000; and the present action. Complaint at 4, 5, 6-7, 9, 10-11 ¶ 14, 20, 28, 30-31, 34, 36, 50, 58-60. Her formal and informal complaints evidence her awareness of "the wrong" of defendant's actions.

the statute of limitations. See Hardin v. Straub, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). The New York rule against tolling for the time a plaintiff pursues a related but independent cause of action in state courts is applicable to suits under section 1983. See Board of Regents v. Tomanio, 446 U.S. 478, 64 L.Ed.2d 440, 100 S.Ct. 1780 (1980). New York law does not permit tolling of the statute of limitations during the pendency of administrative proceedings. See, i.e., Auletta v. Tully, 576 F.Supp. 191, 195 (N.D.N.Y. 1983). The U.S. Supreme Court has not explicitly held that § 1983 actions may not be tolled during Title VII proceedings, but has with respect to § 1981. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (noting that 42 U.S.C. § 1981 is a separate and independent remedy from Title VII, and is not tolled). The Second Circuit has extended this to § 1983 actions. Zangrillo v. Fashion Institute of Technology, 601 F. Supp. 1346 (S.D.N.Y. 1985), aff'd w/o opin. 788 F.2d 2 (2d Cir. 1985) (holding that actions under 42 U.S.C. § 1983 are "separate, distinct and independent" from those under Title VII, therefore New York's rule against tolling applies).

Plaintiff proffers several theories to support the timeliness of her claims. Plaintiff requests that the statute of limitations be tolled equitably due to the events of September 11th. "The statute of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Serv. 32b-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004). Plaintiff fails to indicate why equitable tolling should be applied to a cause of action brought in November of 2000 because of a terrorist attack occurring in September of 2001. The statute of limitations is measured from the time of filing, and any delays which occur after the claim is brought

clearly do not impact whether plaintiff's claims are barred.[7] Therefore, the events of September 11, 2001 cannot equitably toll the statute of limitations which required bringing an action prior to November, 2000.

Lastly, plaintiff argues that the totality of the alleged actions comprise a single continuing violation, and thus defendants' actions are not precluded by the statute of limitations. The continuing violation doctrine allow all claims resulting from a discriminatory policy or practice to be considered timely, even if untimely standing alone. See Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). While the continuing violation exception arises from Title VII, see Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993), the Second Circuit has applied it equally to § 1983. Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). However, "[a]s a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." Weeks v. N.Y. State Div. of Parole, 273 F.3d 76, 82 (2d. Cir. 2001); see, i.e., Fitzgerald v. Henderson, 251 F.3d 345, 363 (2d Cir. 2001) (finding a continuing violation where there is a "constant stream" of "almost daily abuse" with "no interruption"). "Indeed, only 'compelling circumstances will warrant application of the exception to the statute of limitations.'" See Quadrozzi Concrete Corp. v. City of New York, 2004 U.S. Dist. LEXIS 19880, *25 (S.D.N.Y. 2004), citing McMillian v. City of New York, No. 95 Civ. 5459, 1997 U.S. Dist. LEXIS 14312 (S.D.N.Y. Sept. 19, 1997), aff'd, No. 97-9261, 1998 U.S. App. LEXIS 12949 (2d Cir. May 29, 1998).

---

[7] Her claims cannot be tolled under the doctrine of delayed accrual, which allows for tolling where a party is injured by a municipality but is not aware that it is pursuant to a "policy or custom," the statute of limitations can be tolled until this was discovered. Pinaud, 52 F.3d 1139 at 1157. Monnell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), overruling Monroe v. Pape, 365 U.S. 167 (1961). See Singleton v. New York, 632 F.2d 185, 195 (2d. Cir. 1980).

In order to assert a continuing violation, a plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998). In any event, there must be at least one timely claim filed. See Weeks, 273 F.3d at 76.[8]

Plaintiff alleges in her complaint that her claims are based on a "custom, policy, practice or pattern [of discrimination]." Complaint 14 at ¶¶ 78, 80, 82. These conclusory allegations are substantially similar to those in Weeks, where the court noted that plaintiff "argue[d] that writing down the words 'custom and policy' in a complaint is sufficient to invoke the continuing violations exception, and stave off dismissal of otherwise untimely claims." Weeks, 273 F.3d 76 at 82 (2d Cir. 2001). "[W]hat must be alleged to withstand dismissal on the pleadings … is a discriminatory policy or practice, not the undertaking to come up with one." Id. at 83. Moreover, "a simple declaration that defendant's conduct violated the ultimate legal standard at issue (e.g., it was 'because of sex' or 'severe and pervasive') does not suffice." Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001).

Moreover, the untimely claims must be "continuous in time" with those timely filed. Plaintiff fails to allege that defendants' conduct were based on any specific policy or practice. These incidents are not sufficiently continuous to serve as a proxy for a specific policy or custom to find a continuing violation. See Quinn, 159 F.3d at 766 (refusing to

---

[8] The Supreme Court in Morgan clarified the continuing violation doctrine as it applies to Title VII, holding that untimely claims for "discrete discriminatory or retaliatory acts," any one of which would "constitute[ ] a separate actionable 'unlawful employment practice'" cannot be made timely by asserting the continuing violations doctrine. See AMTRAK v. Morgan, 536 U.S. 101, 113, 122, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002). Claims for a hostile work environment, which may involve a series of acts not actionable on their own, may consider untimely acts for purposes of establishing a hostile environment. Id. at 117. Liability will be found "[p]rovided that an act contributing to the claim occurs within the filing period." Id.

10

apply the continuing violations doctrine where several alleged incidents occurred in 1985 and 1988, with single discrete acts occurring in 1989 and February, 1990). Plaintiff's "alleged acts are sufficiently isolated in time … as to break the asserted continuum of discrimination." Id.

Plaintiff has not asserted any reasons sufficiently compelling to extend the statute of limitations. Since this action was commenced on November 27, 2000, any allegations supporting the claim under § 1983 must have occurred after November 27, 1997. There have been no allegations of conduct by the individual defendants since 1995. There is therefore also no basis to implicate any of their conduct as part of a continuing violation, since there is no timely actionable conduct.[9] See Morgan, 536 U.S. at 117. Accordingly, the equal protection, due process, and first amendment retaliation claims are dismissed.

C.   Americans with Disabilities Act (ADA)

Plaintiff has also alleged violations of Title I of the ADA, 42 U.S.C. §§ 12111-12117. The individual defendants, in both their official and representative capacities, are not subject to suit under the ADA. There is no shortage of authority indicating that, in light of the parallel language in the ADA and Title VII, neither covers individual defendants. See, i.e., Ifill v. UPS, 2005 U.S. Dist. LEXIS 5230 (S.D.N.Y. 2005); Glozman v. Retail, Wholesale & Chain Store Food Emples. Union Local 338, 204 F. Supp. 2d 615, 627 n.6 (S.D.N.Y. 2002) (noting "district courts in the Second Circuit, while acknowledging that the Second Circuit has not directly ruled on the issue, have held that an employee cannot be

---

[9] Liability under § 1983 requires "personal involvement" of the defendants, and there has not been an allegation of any claims timely filed in which the defendants were involved or had supervisory authority over. See Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001); Farrell v. New York, 946 F. Supp. 185, 193 (N.D.N.Y. 1996) (dismissing § 1983 claims against defendants where none engaged in any conduct within the statute of limitations, but allowing Title VII claims to proceed).

11

held liable under the ADA"). Defendant New York State has immunity from prosecution under the Eleventh Amendment to the Constitution. The Court has determined that the Title I of the ADA was not drafted to overcome this immunity, based on no traditional pattern of unconstitutional treatment of the disabled by the States and the imposition of a standard higher than the constitutional minimum for protection of the disabled. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 372 (2001).[10]

## CONCLUSION

Defendants' motion to dismiss plaintiff's second amended complaint is therefore granted.

Dated: New York, New York
      June 14, 2005                                     SO ORDERED:

                                                                      GEORGE B. DANIELS
                                                                      United States District Judge

---

[10] Although plaintiff makes mention of Title VII violations on the first page of her second amended complaint, she does not include a Title VII claim under her listed causes of action. Nor does she discuss with specificity any actions by defendants that could support a Title VII claim. Title VII claims against the individual defendants, however, must be dismissed as it is well settled that there can be no individual liability under Title VII. See Mendez v. City of New York Human Resources Admin., 2005 WL 1109451, *2, (S.D.N.Y. May 10, 2005)(citing Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), which held that an employer's agent may not be held individually liable under Title VII"); see also Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir.2003) (affirming dismissal of plaintiff's Title VII claims against defendant in his personal capacity because "under Title VII individual supervisors are not subject to liability").

12